898 So.2d 1089 (2005)
Joyce WINTZ, Appellant,
v.
GOODWILL and Summit Claims Management, Appellees.
No. 1D04-3127.
District Court of Appeal of Florida, First District.
March 24, 2005.
*1090 David Koenig, of Barbas, Koenig, Nunez, Sanders & Butler, Tampa, for Appellant.
Larry Cangro, of Matusek, McKnight, Poluse & Cangro, P.A., St. Petersburg, for Appellees.
HAWKES, J.
In this appeal from the order of the Judge of Compensation Claims (JCC) denying compensability of Claimant's hand condition, Claimant raises two arguments. First, after invoking the pay and investigate provisions of section 440.20(4), Florida Statutes (2003), the E/C failed to conduct a "good-faith" investigation into the claim and was unable to produce a copy of their notice of denial. Second, the causal connection between Claimant's employment *1091 and injury was established by her unrefuted testimony and medical evidence, and therefore, the JCC erred in rejecting the evidence. We disagree with both arguments and affirm.

FACTUAL & PROCEDURAL HISTORY
Claimant notified the carrier that she suffered a work-related injury to her right hand and wrist. Claimant alleged the injury occurred from a combination of a specific incident of pulling a rack of clothes at work and a repetitive work injury. The unsigned notice of injury listed the date of injury as April 24, 2003. The carrier filed the notice of injury and sent Claimant a letter invoking its right to "pay and investigate" the claim, pursuant to section 440.20(4), Florida Statutes. Subsequently, Claimant asserted the injury actually occurred on March 24, 2003.[1] After this, the carrier sent an investigator to speak with Claimant. During the meeting, Claimant apparently told the investigator she injured her hand while pulling a rack of clothes. However, Claimant also reported she suffered pain in her wrist and neck for a "couple of years" prior to the date of accident.
The treating physicians provided varying diagnoses, ranging from carpal tunnel syndrome and DeQuervain's tenosynovitis to fibromyalgia, cervical radioculpathy, or arthritis.
After receiving medical reports from physicians who examined Claimant in March and May 2003, the carrier, in June 2003, notified both Claimant and the treating physician that further authorization for care would be denied because Claimant's condition was not due to a work-related accident, but was idiopathic and personal in nature. The denial was within the 120 days allowed by statute.

THE "120 DAY RULE" AND GOOD-FAITH INVESTIGATIONS
Carriers invoking the "pay and investigate" option under section 440.20(4), Florida Statutes, "shall immediately and in good faith commence investigation of the employee's entitlement to benefits" and must admit or deny compensability within 120 days after initial provision of compensation or benefits; employees must be notified in writing that the carrier has elected this option. See § 440.20(4), Fla. Stat. Carriers failing to deny compensability within 120 days after initial provision of benefits waive the right to deny compensability unless material relevant facts could not have been discovered during the 120 day period. See id.
Claimant argues the E/C failed to adequately investigate and points out several acts the E/C could have taken to further investigate the claim. Two specific areas of investigation suggested by Claimant are: an inquiry into the changing dates of injury she provided, and contacting the various doctors to clarify their opinions. The requirement of an "immediate and good faith" investigation does not mandate that every investigative act that can be taken is, in fact, taken. It is merely a requirement that the E/C be prepared to decide, within 120 days, what position they wish to take on a given claim, and be accountable for that decision. Obviously, the E/C's decision is not without consequences. If a claim is denied that should have been accepted, the E/C is sanctioned with penalties, interest, and attorney's fees. Likewise, a failure to controvert within 120 days waives the right to controvert the claim, even if a valid defense exists, if the facts giving rise to the defense *1092 could have been discovered within the 120 day period.
Cases holding that carriers are precluded from denying compensability under the "pay and investigate" statute, including those cited by Claimant, are factually distinguishable.[2] In those cases, meritorious defenses were waived because the carriers did not controvert the claim within 120 days and the relevant facts justifying the denial could have been discovered within 120 days. An inquiry into the investigative steps an E/C took is not necessary unless the carrier fails to timely controvert the claim and alleges the material relevant facts could not have been discovered within the 120 days. Clearly, if a carrier fails to timely controvert the claim, and has not shown there were material relevant facts that would establish valid defenses, that could not have been discovered within 120 days, then it has not conducted a good-faith investigation.
Here, in contrast, evidence was presented that the claim had been controverted within 120 days from an April 2003 walk-in clinic appointment (the first date on which the carrier provided compensation/benefits). Although a copy of the denial could not be located, Claimant admitted receiving such a notice, and other evidence was offered showing a denial was made and Claimant called the carrier to discuss the denial.[3] Thus, the E/C complied with the statute, and the JCC properly allowed the E/C to continue with its defense of the claim. Therefore, we must determine whether the JCC erred by rejecting evidence Claimant argues is dispositive to the resolution of her claim.

THE JCC, AS THE FINDER OF FACT, WEIGHS THE EVIDENCE
As her second point on appeal, Claimant insists she was entitled to benefits because the JCC did not point to evidence refuting Claimant's assertion of a work injury. Claimant misconstrues her evidentiary burden.
"A causal relationship between employment and an employee's subsequent condition or injury must be established with reasonable certainty and by objective medical findings." Hunt, 747 So.2d at 973. The determination of whether that connection has been made is a judicial function. See Loyed v. Hillsborough County School Bd., 765 So.2d 731, 732 (Fla. 1st DCA 2000).
Claimant testified she injured herself by pulling a rack, and evidence was offered that she made a consistent statement previously to the E/C's investigator. Claimant notes there was no testimony from the employer, and therefore no evidence to conflict with her testimony that her injury resulted from a work-place accident. From this lack of conflict, Claimant concludes the JCC's statement in her order that: "The evidence simply fails to support this occurrence of the cause of the Claimant's right hand condition," is not supported *1093 by competent, substantial evidence. Absent from Claimant's reasoning is a recognition that the JCC, as the finder of fact, is free to accept or reject any evidence  even Claimant's uncontroverted testimony  that an accident occurred.
Claimant even points out there is medical testimony that could support her claim. One physician opined in his deposition that repetitive use of the hands in conjunction with "sudden onset of pain... from pulling a rack at work" could be consistent with Claimant's injury, and another physician opined in his deposition that repetitive work could aggravate DeQuervain's tendonitis.[4] However, "the standard of review in worker's compensation cases is whether competent substantial evidence supports the decision below, not whether it is possible to recite contradictory record evidence which supported the arguments rejected below." Mercy Hosp. v. Holmes, 679 So.2d 860, 860 (Fla. 1st DCA 1996).
In her final order, the JCC cited evidentiary problems with both prongs of Claimant's injury allegation. As to the specific incident prong, the JCC noted that neither the notice of injury nor the medical records contained a description of the "rack pulling incident." The JCC found the omissions eroded Claimant's allegation of a specific incident contributing to her injury. When considering the repetitive work injury prong, the JCC noted several factors that undermined the claim: (1) Claimant's deposition and hearing testimony was that she had no pain prior to the "rack pulling incident"; (2) No physician evaluated the nature or duration of Claimant's work requirements to substantiate the repetitive work injury; and (3) There were varying medical diagnoses.
Since it is the JCC's responsibility to evaluate and weigh evidence, and the JCC concluded that Claimant failed to establish her claim, we
AFFIRM.
KAHN and VAN NORTWICK, JJ., concur.
NOTES
[1] In her petition for benefits, Claimant asserted the accident date was February 24, 2003, and just prior to the merits hearing, Claimant asked the JCC to amend the accident date to January 2003.
[2] Willis v. Publix Super Markets, Inc., 871 So.2d 941 (Fla. 1st DCA 2004); Singletary v. Yoder's and Ameritrust Ins. Corp., 871 So.2d 289 (Fla. 1st DCA 2004); Hutchinson v. Lykes Smithfield Packing, 870 So.2d 144 (Fla. 1st DCA 2004); Travelers Ins. Co. v. Collins, 825 So.2d 451 (Fla. 1st DCA 2002); Garner v. Clay County Dist. School Bd., 798 So.2d 821 (Fla. 1st DCA 2001); Franklin v. Northwest Airlines, 778 So.2d 418 (Fla. 1st DCA 2001); Bynum Transport, Inc. v. Snyder, 765 So.2d 752 (Fla. 1st DCA 2000); Hunt v. Exxon Co. USA, 747 So.2d 966 (Fla. 1st DCA 1999).
[3] Claimant's attempt to argue the denial is invalid because a copy of the actual denial could not be located, when the Claimant acknowledged getting the denial and other evidence of the denial appears in the record (even the cessation of benefits), would be elevating form over substance.
[4] Although the JCC could have rejected the testimony, we note that no physician testified Claimant's work caused her injury within a reasonable degree of medical certainty.