PER CURIAM.
This is an appeal from a final workers’ compensation order awarding Claimant, Maryann Dickson, compensation for the second arthroscopic surgery she underwent to repair her injured knee. We reverse, finding the Judge of Compensations Claims (JCC) erred in awarding compensation based on its improper application of section 440.20(4), Florida Statutes (2010), and subsequent determination that the Employer/Carrier (E/C) waived its right to deny compensability.

Background

On September 17, 2008, Claimant slipped on a wet walkway in her workplace and tore the posterior horn of the medial meniscus in her left knee. After the injury was deemed compensable, Claimant transferred her medical care to Dr. Scott Goldsmith. Dr. Goldsmith performed arthroscopic surgery on the knee and prescribed Claimant post-surgery physical therapy. Upon her completion of physical therapy, Dr. Goldsmith noted Claimant had no complaints of give-away weakness in her rehabilitated knee.
*1082 On July 5, 2009, Claimant again injured the same knee while walking around the swimming pool at her home. The following day, she visited Dr. Goldsmith, described the injury and voiced new complaints of pain in the medial aspect of her knee. Dr. Goldsmith initially opined that Claimant had aggravated the 2008 injury, disagreeing with a radiologist’s interpretation of an MRI that showed a new tear of the medial meniscus. However, when Claimant’s localized complaints continued, Dr. Goldsmith reexamined the MRI and concluded Claimant had suffered a new meniscal tear in the knee. Claimant underwent a repeat arthroscopy to confirm the diagnosis and debride the new tear.
On September 29, 2009, the E/C sent a letter to Dr. Goldsmith inquiring whether the original 2008 “accident” was the major contributing cause of the new meniscal tear. Dr. Goldsmith indicated it was not. A week later, the E/C sent Dr. Goldsmith a second letter, asking whether Claimant had reached maximum medical improvement from her 2008 injury and whether she sustained a permanent impairment as a result of that injury. Dr. Goldsmith indicated that but for her July 5 fall at home, Claimant would have reached maximum medical improvement for the first injury in late July, 2009. Dr. Goldsmith also reiterated that the injury sustained in the second fall was a new injury, unrelated to the 2008 injury.
Based on Dr. Goldsmith’s opinion, the E/C had its adjuster prepare a notice, denying compensation for the new injury. The date listed on the notice of denial was November 27, 2009.

Compensation Hearing

At a hearing before the JCC, Claimant sought authorization for the second ar-throscopy as well as continued treatment for her left knee. The E/C denied any causal relationship existed between the 2008 accident and Claimant’s current injury, specifically asserting that a compensa-ble accident was not the major contributing cause of the need for the arthroscopy or any other continuing treatment for her knee.
The JCC found, based in part on Dr. Goldsmith’s testimony, that Claimant had a new “accident” and suffered a new injury when she fell on July 5, 2009. However, despite neither party arguing for application of the provisions of section 440.20(4)— which gives the E/C a 120-day window from the time it first provides medical treatment to investigate compensability of a claim, after which it cannot deny com-pensability — the JCC found the provision to be “mandatory,” requiring her to apply it to the facts of this case. Thus, because 120 days had ostensibly passed between the date the E/C received notice of Claimant’s new injury and the date the E/C denied compensability, the JCC found she was compelled to conclude that the E/C waived the right to deny compensability.
Thereafter, the E/C filed a motion for rehearing, asserting it was improper for the JCC to make a ruling based on section 440.20(4)’s 120-day provision because: (1) it was outside the scope of the issues presented; and (2) the JCC misapprehended or overlooked pertinent facts related to the application of the 120-day provision. Attached to the motion was an affidavit signed by the E/C’s adjuster asserting that, upon review of her file, she discovered that the notice of denial contained a typographical error and was actually issued on October 27, 2009 (within the 120-day period), not November 27, 2009. The JCC denied the E/C’s motion, finding that:
The provisions of F.S. 440.20(4) are mandatory and not in the nature of an affirmative defense. I cannot overlook such provisions in drawing my conclusions of law. It was incumbent upon the *1083 adjuster to be aware of mandatory statutory provision and to provide accurate testimony at the time of trial, not after I enter my final compensation order.

Analysis

We reverse the JCC’s ruling for two reasons: First, the JCC violated the E/C’s right to due process by sua sponte raising the application of section 440.20(4) and denying the E/C the opportunity to present evidence regarding the section’s applicability. Second, section 440.20(4) does not operate to preclude an E/C from denying a specific claim for benefits on grounds that the claimant’s need for such benefits did not stem from a compensable accident or injury.
Regarding due process, it is a longstanding tenet of workers’ compensation law that parties are entitled to notice of the issues to be determined at the final hearing, and “[a]n order that is not in accord with the understanding with which the workers’ compensation hearing was undertaken and participated in is a denial of due process and must be reversed.” Commercial Carrier Corp. v. LaPointe, 723 So.2d 912, 915 (Fla. 1st DCA 1999) (citing Se. Recycling v. Cottongim, 639 So.2d 155, 157 (Fla. 1st DCA 1994) (internal citations omitted)).
Under section 440.20(4), if an E/C fails to contest compensability of an injury within 120 days of the initial provision of benefits or the payment of compensation, it has the burden of producing evidence to “establish material facts relevant to the issue of compensability that it could not have discovered through reasonable investigation within the 120-day period.” § 440.20(4) Fla. Stat. (2010); see also Mims v. Confederated Staffing, 940 So.2d 518 (Fla. 1st DCA 2006). Thus, prior to determining whether an E/C has waived the right to deny compensability pursuant to section 440.20(4), a JCC should afford the E/C the opportunity to present evidence to refute allegations that it failed to deny a claim in a timely fashion.
Here, the JCC denied the E/C due process when she sua sponte raised the application of section 440.20(4) without affording the E/C the opportunity to present evidence regarding the section’s applicability. Additionally, by finding “as a matter of law the E/C cannot deny compensability of claimant’s knee injury sustained on 7/5/09” and mischaracterizing section 440.20(4) as “mandatory” and “not in the nature of an affirmative defense,” the JCC improperly denied the E/C the opportunity to establish material facts that could be used to prove it did timely deny benefits.
Regarding the applicability of section 440.20(4), it is well settled that a waiver resulting from an E/C’s failure to deny compensability within 120 days of an initial provision of benefits pertains solely to the concept of compensability. See Checkers Restaurant v. Wiethoff, 925 So.2d 348 (Fla. 1st DCA 2006).
Section 440.20(4) operates only to resolve the issue of whether a claimant suffered a compensable workplace injury, not to preclude an E/C from challenging the claimant’s entitlement to benefits, particularly whether the originally compensable workplace injury was the major contributing cause of the need for specific benefits. See id. (holding a claimant was not entitled to continuing medical benefits for an injury because, although the E/C did not deny compensability within the 120-day period, evidence showed that the major contributing cause of the claimant’s need for surgery was her preexisting condition); and see Mims, 940 So.2d at 520 (holding while section 440.20(4) does bar the carrier from denying compensability after the expiration of the 120-day pay- *1084 and-investigate period, it does not have the effect of precluding the carrier from denying a specific claim for benefits on the ground that the injuries resulting from the compensable accident were not the major contributing cause of the claimant’s need for such benefits).
Here, the E/C had agreed to provide coverage for injuries caused by Claimant’s 2008 accident. In 2009, when it authorized benefits for Claimant’s new injury, it believed (pursuant to Dr. Goldsmith’s diagnosis) it was paying for treatment of an injury caused by the 2008 accident. It was not until later that the E/C learned the 2008 accident was not the major contributing cause of the second tear to Claimant’s medial meniscus and initiated a challenge to Claimant’s entitlement to treatment.
As noted, section 440.20 does not preclude an E/C from denying a claim for benefits on the ground that a compensable accident was not the major contributing cause of the injury the claim is based on. Thus, even if the JCC had not erred in its sua sponte application of section 440.20(4) and the E/C were unable to prove it issued its notice of denial within 120 days of authorizing treatment, the section would not preclude the E/C from disputing Claimant’s right to benefits.
Because the JCC’s sua sponte application of section 440.20(4) was in error, and because section 440.20(4) is inapplicable to claimant’s challenges regarding whether a compensable accident was the major contributing cause of an injury, we reverse.
REVERSED and REMANDED for proceedings consistent with this opinion.
HAWKES and MARSTILLER, JJ., concur; WOLF, J., Concurs with Opinion.